CaRTJTHERS, J.,
delivered the opinion of the Court.
The predecessor of Boon, as clerk, took the note of Still, who was the purchaser of a tract of land belonging to the heirs of Harbet Newsom, sold for partition, with Pe-gues surety, for $5,508, due on the 7th day of January, 1858, payable to himself 'and his successors, as such clerk, for the use, &c. On the 11th day of January, 1858, the note not haying been paid, judgment was rendered on motion and without notice, by the Circuit Court against the parties, and they appealed to this Court.
On the errors assigned, we hold:
1. The note was properly taken to the acting clerk and his successors, and the latter could recover judgment upon it.
2. The Circuit, as well as the Chancery Court, where such sales are made, can render judgment against the purchasers failing to pay, when due, upon the notes given by them at such sales. The case of Blackmore vs. Baker, 2 Swan, 242, based upon the doctrine of Deadrick vs. Smith, 6 Humph., 146, fully maintains the power of a Court of Equity to adopt this summary remedy to compel the purchaser to perform his contract; *382 and these cases hold, that it •would he objectionable and erroneous to resort to any other Court than that in which the sale is made, for the purpose of enforcing payment. As the purchaser has become a party to that suit, he is liable by motion or petition in the same, and that without notice. After these cases, all that remains to be settled is, whether the Circuit Courts have the same power in this respect, in regard to sales made by them. And we think they have, by a fair construction of the statutes conferring the power. "We have a Legislative construction to this effect in 1852. In 1849, ch. 185, concurrent power was given to the County Court to sell land in certain cases, and by act of 1852, ch. 92. § 1, the same power is given to the County Court, “to render judgment and award execution that the Circuit and Chancery Courts now have in such cases.” This clause clearly shows, that the Legislature understood they had given the same power to each Court, Circuit and Chancery, by previous acts, to render judgment upon their respective sale notes. It is true, this last act prescribes five days previous notice of the motion for judgment, but as that was not required before, in the other Court, it cannot by construction be extended to them. If it had been so intended, it would surely have been expressed, as the decisions which had been made on that subject were known to them. The argument, that, as it was deemed necessary to pass a special act to authorize the County Court to enter judgment by motion in these cases, the power did not exist in the Cir cuit Court by virtue simply of the act of 1835, giving it concurrent jurisdiction with the Chancery Court in such cases, is plausible, as the act of 1849 gave the *383 County Court “concurrent” jurisdiction with the former, hut still it was thought necessary to pass the act of 1852, specially conferring this power. But the inference is rebutted by the above extract from the act, as the jurisdiction of the Circuit Court to enter such judgment is expressly recognized therein. But after all, the passage of the act is not by any means conclusive that the same power did not exist without it, and that its only effect was to require the five days notice in that particular Court.
The fair construction of the act of 1835, giving the Circuit Court concurrent jurisdiction with the Chancery Court over these sales is, that the necessary incidents to carry out and make the proceeding effectual and complete, which the one tribunal possessed, as an inherent power, was communicated to the other.
There could be no good reason for sending the notes to another court to collect, previous to divestiture of title, which would have to be done by the Court ordering the sale after the payment of the consideration. This construction is certainly most convenient, and least expensive to the parties, and there is no decision, of which we are, aware to the contrary.
The question made in relation to a small mistake— less than one dollar — in counting the interest in this case, will not be noticed by a Court exercising equity jurisdiction as a ground for reversal, whatever might be its effect in a proceeding at law.
A question is made as to the proper rate of interest on affirmance in this case, whether it should be six or twelve and-a-half per cent. This depends on the construction to be given to the act of 1823, ch. 54, § 2. *384 The latter part of the section is very broad: “In all appeals hereafter taken ■ from an inferior to a superior jurisdiction, where the judgment’ of the inferior jurisdiction is affirmed, the rate of interest shall he twelve and-a-half per cent. It was held in the case of Trainer vs. Skein, 10 Yerg., 369, that a proper construction of this whole section taken together would confine it to appeals, &c., from Courts of Law, and not extend it to appeals from decrees of a Court of Equity. To this case the Courts have ever since conformed. But the reason of that case does not apply to the question now presented. That refers to decrees settling the rights of parties in equity proceedings, not to a case where notes or bonds have been taken under the direction of the Courts, and judgments are rendered upon them, as an incidental power to carry out and effectuate their proceedings, instead of sending the party out to another Court for udgment. In such a case as this, we think the act applies, and, the party is entitled to the rate of interest given by it.
The decree will be in all things affirmed.